## No. 10,117.

### LEON QUEROUZE VS. MRS. A. S. CAPMARTIN AND HUSBAND.

To bind the wife as a public merchant two things are essential—1. that the business be conducted in her name ; and 2. that it be separate from that of her husband.

Where the business is conducted in a name which is neither that of husband or wife, and when the plaintiff, in his business correspondence, addressed his [letters in such name with the prefix of *Monsieur*, he cannot claim that he supposed the name to designate the wife.

When the husband appears as the head of the business and mainly conducts it, when the licenses are taken out and the contracts executed in his name, and when he is regarded in the community as its head and master, no participation therein by the wife will make her liable.

APPEAL from the Eleventh District Court, Parish of Natchitoches.
Pierson, J.

*J. M. Tucker* and *F. Michinard* for Plaintiff and Appellant.

*J. E. Breda* for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J.   The object of this suit is to hold a wife liable for a mercantile account contracted by a concern which did business in the

town of Natchitoches under the name of A. S. Capmartin, on the ground that she contracted said debt as a public merchant.

The name in which the business was conducted is not the name of either the husband or the wife. The husband's name is A. Sallières. The wife's maiden name was Anna Capmartin, and her married name might be Anna Capmartin Sallières, but certainly not Anna Sallières Capmartin, or A. S. Capmartin.

The business was managed by the husband and wife jointly, but mainly by the husband, who did most of the trading and conducted nearly the whole of the correspondence.

The account was kept, the goods invoiced and everything conducted by plaintiff in the name of A. S. Capmartin. Whom did the plaintiff consider to be A. S. Capmartin? A significant circumstance which no explanation and hardly any evidence could overcome is that plaintiff's correspondence is almost universally addressed to " *Monsieur* A. S. Capmartin," and begins " Mon cher Monsieur." while the husband's letters were often signed A. Sallières as well as A. S. Capmartin. *Monsieur* A. S. Capmartin means necessarily *monsieur le mari*, not *madame la femme*.

The Code provides " she (the wife) is considered as a public merchant, if she carries on a *separate* trade, but not if she retails only the merchandise belonging to the commerce carried on by her husband." Art. 131.

Marcadé, commenting on like article, 220, of the French Code, says : " The wife is not considered as a public merchant when she merely retails goods engaged in the husband's commerce.

Then it is not she who trades, but her husband, and she is simply his mandatary. Whenever the business is not conducted in the name of the wife, the husband is the master, and she only buys and sells for his account, binding him only and not herself." 1·Marcadé, p. 561.

And Demolombe gives the meaning of the Code to be this : " When the husband himself trades and is personally at the head of the business, the wife's personality disappears. And if she assists her husband, if she stands behind the counter and sells, if even she signs notes or bills, in all this she is held to act only as mandatary of her husband without binding herself." 4 Demolombe, p. 236.

And the French courts so interpret it : " A married woman, whatever part she may take in the business of her husband, cannot, on that account, be held as a public merchant. She is a public merchant only when she conducts a *separate* business." J. P. 1841, 1 219.

To the same effect is our own jurisprudence. Chauvier vs. Fliége,

SUPREME COURT OF LOUISIANA.

6 Ann. 56; Sarran vs. Ragouffie, 12 Ann. 350; Christensen vs. Stumpff, 16 Ann. 50.

All the above cases presented features similar to this, and in some particulars stronger, against the wife.

The business here was not conducted in the name of the wife, and the correspondence conclusively shows that the named used, although not the name of the husband, was understood to designate the husband. The business was not *separate* from that of the husband in the sense of the law, but he himself conducted it and appeared as its head. The State and parish licenses were taken out in his name, and the evidence shows that the community in which it was carried on regarded and treated him as the merchant. All the contracts for furnishing supplies to farmers or laborers, which was the chief business, were made in the name of A. Sallières.

We have carefully considered the evidence touching the conduct and representations of the wife in her dealings in this city, but we think the whole conduct and management of the business too clearly indicated to plaintiff, the participation in and control of the business by the husband, and that their correspondence too clearly shows that the A. S. Capmartin with whom they dealt was a *monsieur* and not a *madame*, to justify us in holding the wife for a fraud, the commission of which, or intent to commit it, is denied by her under oath. If plaintiff was deceived, it was in the face of facts and circumstances which should have enlightened him and prevented the possibility of deception.

Judgment affirmed.